# TALMADGE *v.* CENTRAL OF GEORGIA RAILWAY CO.

1. There was no error in sustaining the special demurrer and striking a portion of the plaintiff's declaration.
2. In an action for the recovery of damages resulting from a fire kindled upon the property of the defendant, as a general rule it is necessary for the plaintiff to show that the fire was unlawfully kindled, or negligently kindled or guarded.
3. If, without more, it should be shown that a fire was occasioned by the operation of the locomotive, cars, or other machinery of a railroad company, and that damage resulted to the owner of adjacent property, under the Civil Code, § 2321, negligence on the part of the company would be presumed. But if the damage complained of was not caused "by the running of the locomotives, or cars, or other machinery" of the company, or by some person in its employment and service, within the meaning of that statute, the rule as to presumption arising from proof of damage would not apply.
4. In determining what ordinary care requires the employees of the railroad company to do on a given occasion, the situation and circumstances are proper for consideration.
5. The grant of a nonsuit in this case was error.

Argued February 22,—Decided May 16, 1906.

Action for damages. Before Judge Lewis. Jasper superior court. March 28, 1905.

Talmadge brought suit against the Central of Georgia Railway Company, alleging, in brief, as follows: He was the owner of a lot in the town of Monticello, near the depot of the defendant and adjoining its right of way. Upon it was a gin-house, an engine-house, and a seed-house, and surrounding the greater part of the lot was a plank fence. All of these improvements were well constructed of good materials. On May 21, 1901, the agents of the defendant placed a line of freight and "shanty" cars on the side-track south of the depot and alongside of the property and buildings of the Standard Oil Company, the Planters Warehouse Company, and the plaintiff, one of which cars was used by the agents, servants, and employees of the defendant company as "a cook-car." This car was placed on the side-track immediately in front of and within four feet of the Planters warehouse, in which were stored hay, linters, packing or stuffing for collars, and other highly inflammable materials, which fact was known to the defendant, its servants, agents, and employees, or should have been known to them, the materials having been stored in the building from cars of the defendant. About sundown or dark on the evening of that

day, a fire was kindled and started in a cooking stove in the "cook-car" by the servants and employees of the defendant. They so carelessly and negligently watched, cared for, looked after, and tended the fire thus started in the stove that it escaped therefrom and was communicated to the wooden portion of the car, from which the flames spread and were communicated to the buildings of the Planters Warehouse Company, and thence to the houses and fence of the plaintiff. The fire was discovered by the employees of the defendant soon after it had escaped from the stove, and long before it was communicated to the warehouse building, and in ample time for them to have prevented its spreading to such building, had they used any care or diligence whatever. Negligence was alleged in the following particulars: (1) "in placing a car used for the purpose the said cook-car was used for so close to the building of said Planters Warehouse Company, the same being a wooden building, in which was stored the inflammable materials aforesaid;" and especially is this true when the defendant company had a side-track north of its depot, on which said shanty-cars, including said "cook-car," could have been placed without danger or menace to the property of petitioner; (2) in failing to exercise ordinary care and diligence to extinguish the fire and prevent damage to his property after it was communicated from the stove to the car, and in not preventing the spreading of the fire to the adjacent building; (3) in not exercising ordinary care and diligence, after the discovery of the fire in the car, to move it away from the warehouse and place it in a position where the fire could not be communicated to adjacent property; (4) in using a "cook-car" and stove so constructed and kept in such a bad state of repair as to permit and allow fire to escape, it being alleged that the stove and car were not suitable and properly equipped for the purposes for which they were used.

By amendment the plaintiff alleged, that the "cook-car" was not a car originally intended for service for that purpose, but was built and constructed for use as a freight-car, and had been converted into a "cook-car" by cutting a hole through the top thereof, through which a stovepipe was passed from the top of an ordinary cooking stove; that the pipe was of very thin sheet-iron, which could be easily heated, and, passing through the wooden top of the car, communicated fire to it; that the floor of the car was not provided with

any covering, but was of wooden material and easily ignited; that the stove was an ordinary one, with no fire flues for the pipe through the wooden portion of the car, and was not a suitable one for use in such car; that by the use of the car so equipped, and by building a fire therein, defendant's employees caused the car to become ignited and to be destroyed by fire, from which the plaintiff's property was set on fire and destroyed; and that, by the use of ordinary care after they had discovered the fire, they could have removed the car to a place on the side-track or on the main line where there would have been no liability of injury to the plaintiff's property.

The defendant demurred to the petition. The court overruled the demurrer except as to three grounds which had reference to the first specification of negligence, to the effect that the defendant was negligent in placing a car used for the purpose which this was used for on the side-track, especially when it had another side-track on which the car could have been placed. To this ruling the plaintiff excepted pendente lite. After the introduction of the plaintiff's evidence, the court granted a nonsuit, and the plaintiff excepted. He also assigned error on the ruling of the court upon the demurrer.

*A. S. Thurman* and *W. S. Florence*, for plaintiff.

*N. E. & W. A. Harris,* for defendant.

LUMPKIN, J. (After stating the foregoing facts.)

1. On special demurrer the court struck from the declaration the allegations to the effect that there was negligence on the part of the defendant "in placing a car used for the purpose the said cook-car was used for so close to the building of said Planters Warehouse Company, the same being a wooden building, in which was stored the inflammable materials aforesaid;" and that this was especially true when the defendant had another side-track on which its "shanty" cars could have been placed without danger. It will be noticed that this does not complain that on account of the manner in which this car was constructed, or its dangerous character arising from such construction, or from the way in which the defendant's agents acted, or from any other special facts set out, it was dangerous to place this particular car at the point where it was left, and that knowingly to do so was an act of negligence. Had this been the allegation, a different question would have been presented. But while the declaration does allege improper construction and carelessness in the manner of using fire on the car, and

specifies these things as acts of negligence, yet, in respect to the particular point now being considered, it in general terms charges that the placing of *"a car used for the purpose the said cook car was used for"* at that point was in itself an act of negligence. This is equivalent to alleging that to place any car used as "a cook-car," or, in other words, any car in which cooking is done, beside a warehouse which contains inflammable materials is in itself an act of negligence, without reference to how it is constructed or the manner in which the cooking is done or the fire used, or anything else to show special danger. To hold this would be to go beyond any rule which has yet been laid down, so far as we are aware. If a car in which cooking is done is necessarily so dangerous that to locate it on a track near a wooden warehouse is in itself an act of negligence, without regard to the manner of its construction or other facts showing danger, it might also be urged that a mere assertion that the building of a kitchen or room in which cooking is to be done by one property owner, not far from the house of a neighbor, is also in itself negligence. If this were so, all persons who should build kitchens or rooms in which cooking is done on their property in thickly settled communities would be guilty of negligence by reason of the mere location of such rooms, without regard to how they are constructed or used. There may be negligence in this matter, but the allegations do not show that sparks escaped from the car, or that the inflammable material was in such position as to be exposed to sparks or fire, if the car were properly constructed and properly used, or base the charge of negligence in this regard on special facts. It may have been intended in this case to allege that *the particular car* which was claimed to have been negligently constructed and negligently used was so dangerous that knowingly to place it where it stood was improper; but such was not in fact the allegation. The allegations as to the location and use of the car, as part of the general case, were not stricken, but only the special allegations of negligence above referred to.

2, 3. Liability for negligent fires has long been a subject both for legislative enactment and discussion by the courts. In Rome, by the law of the Twelve Tables, a person by whose negligence any fire began was declared to be liable to a sufferer therefrom, or, if he was not able to pay, was subject to corporal punishment. In the early days, at common law, it was held that if a house took fire, its

owner was answerable for any injury thereby occasioned, irrespective of the question of negligence. The hardship of this rule was corrected by the statutes of 6 Anne, c. 31, 12 George III, c. 73, and 14 George III, c. 78. The statute of Anne provided that no action would lie against any person "in whose house or chamber any fire shall accidently begin." By the statute of 14 George III the provision of this act was extended to fires accidently originating in a stable, barn, or outbuilding. The meaning of the word "accidental" as used in these statutes gave rise to some difference of opinion, but the weight of modern authority is that such enactments did not exempt from liability the author of negligent fires; but there must have been negligence either in the starting or controlling of the fire. While some courts have denied that these statutes (or rather the statute of 6 Anne, c 31, as modified and changed by that of 14 Geo. III) became a part of the common law in the United States, the better opinion is that they did so. 13 Am. & Eng. Enc. Law (2d ed.) 409 et seq., and notes; Filliter *v.* Phippard, 63 E. C. L. (11 Q. B.; 11 Ad. & El., N. S.), *347, where the statement in 1 Bl. Com. 431, is criticised (p. 356); McNally *v.* Colwell, 91 Mich. 527 (30 Am. St. R. 494, and note on p. 501); Lathrop *v.* Thayer, 138 Mass. 466; Webb *v.* Rome R. Co., 49 N. Y. 420 (10 Am. Rep. 389); 2 Shear. & Redf. Neg. (5th ed.) 665; note to Brown *v.* Brooks, 21 L. R. A. 255. In Read *v.* Pennsylvania Railroad Co., 44 N. J. L. (15 Vroom) 280, it is said, that, "In an action for the recovery of damages resulting from a fire kindled upon the property of the defendants, it is necessary that the plaintiff should show that the fire was unlawfully kindled, or negligently kindled or guarded." Under our statute (Civil Code, §2321), if damage is shown to have been done by the running of the locomotives, cars, or other machinery of a railroad company, or by any person in the employment and service of such company, a presumption of negligence arises, subject to be rebutted by evidence; and the expression, "by the running of the locomotives, or cars," is not to be given so narrow a construction that a mere temporary stopping in transit to allow passengers to alight or change cars will take the case without its meaning. *Georgia Ry. Co. v. Reeves,* 123 *Ga.* 698. In *Gainesville R. Co. v. Edmondson,* 101 *Ga.* 747, it was held, that, "To authorize a plaintiff to recover damages from a railroad company for the destruction of property by fire caused by

the running of its locomotives, it must appear that such damage was occasioned by the fault or negligence of the company or its agents. If, without more, it should be shown that the fire was occasioned by operation of a locomotive, negligence on the part of the company would be presumed." But it has been held that unless the damage complained of results "from the running of the locomotives, or cars, or other machinery" of the company, or from some wrongful act of an employee which is itself the direct and efficient cause of the damage to the person injured, the rule as to the presumption arising from proof of damage does not apply. *Savannah R. Co.* v. *Flaherty,* 110 *Ga.* 335; *Georgia R. Co.* v. *Nelms,* 83 *Ga.* 70; *Rome R. Co.* v. *Thompson,* 101 *Ga.* 26; *Atlantic & Birmingham R. Co.* v. *Reynolds,* 117 *Ga.* 47; *Atlanta Ry. Co.* v. *Johnson,* 120 *Ga.* 908, 912.

4. While the presiding judge struck the specific allegation of negligence stated in the preceding portion of this opinion, he did not strike the allegation that in fact the car of the company in which the fire originated was placed on a side-track very near a warehouse containing inflammable material, nor did he reject evidence on that subject. These things were left as a part of the general aspect of the case and as showing the circumstances. What ordinary care requires to be done is necessarily affected by the situation and surroundings. Thus where a fire was communicated from an engine to adjacent property, the fact that it was standing on a side-track in a city, near to the property, was held to be a proper circumstance for consideration in determining what precaution due care required to be taken. *Fero* v. *Buffalo R. Co.,* 22 N. Y. 209, 78 Am. Dec. 178; St. Louis Railway Co. v. Hecht, 38 Ark. 357; Chicago Railroad Co. v. Quaintance, 58 Ill. 389; Riley v. Chicago Railway Co., 71 Minn. 425, 74 N. W. 171; Ohio Railroad Co. v. Shanefelt, 47 Ill. 497, 95 Am. Dec. 504; Cooley on Torts (2d ed.), 700, *590.

The case of *Macon & Western R. Co.* v. *McConnell,* 31 *Ga.* 133, is relied on by the defendant. It held that a railroad company had the right to have a woodpile for use by its engines at one of its stations, in such quantities and to such extent as its agents or employees thought proper. In the opinion some broad language is used by Lyon, J. Among other things he says that after the fire originated without negligence on the part of the company, it was urged that the employees did not at once drop everything and try

to suppress the fire or prevent the injury; but he remarks, "Their first duty was to save the property in their cars, and which was exposed to the fire. After this was done, I believe it was not denied but that they rendered all the assistance they could." An examination of the same case when it was first before the Supreme Court (27 *Ga.* 481) will show that the railroad company had used the ground as a wood-yard for a long time, and it was held that all persons building contiguous thereto were chargeable with a knowledge of the fact, and of the right of the company to pile up wood on any part of the premises when it suited its interest or convenience to do so.

5. Tested by these views, was a nonsuit properly granted? The Civil Code, §5347, declares: "A nonsuit is not granted merely because the court would not allow a verdict for plaintiff to stand. But if the plaintiff fails to make out a prima facie case, or if, admitting all the facts proved and all reasonable deductions from them, the plaintiff ought not to recover, a nonsuit will be granted." As, under our view, a new trial is necessary, we deem it not best to enter into a discussion of the evidence at length, but to let the jury pass upon the case at the next trial, unaffected by any expression from this court. Suffice it to say that while the evidence is by no means conclusive, or even strong, considering that in regard to the construction of the car, the use to which it was put, the place where it was located, and the occurrences at the time of the fire, we think there was enough to escape what former Chief Justice Bleckley felicitously referred to as the mechanical process of nonsuit, and be submitted to the jury. We do not hold that the plaintiff ought to recover. We merely hold that he ought not to have been nonsuited. *Judgment reversed. All the Justices concur.*